# Exhibit A



November 15, 2022

Via Federal Express

Michael S. Regan
Administrator
United States Environmental Protection Agency
William Jefferson Clinton Building
1200 Pennsylvania Avenue, NW Washington, D.C. 20460

Dr. Earthea Nance, PhD
Administrator, Region 6
U.S. Environmental Protection Agency
1445 Ross Avenue,
Dallas, Texas 75202

David Garcia
Director, Air Division
U.S. Environmental Protection Agency
1445 Ross Avenue
Dallas, TX 75202-2733

    Re:    **Notice of Intent to File Suit Under 42 U.S.C. § 7604(b)(2) for Failure to Issue a Federal Implementation Plan or Approve or Disapprove a State Implementation Plan under 42 U.S.C. §§ 7410(c)(1)**

Dear Administrator Regan:

    Under Section 304(b)(2) of the Clean Air Act, 42 U.S.C. § 7604(b)(2), we write to inform you that Sierra Club intends to file suit against the Administrator of the U.S. Environmental Protection Agency ("EPA") for the "failure of the Administrator to perform any act or duty under [the Clean Air Act] which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2). Specifically, the Administrator has violated 42 U.S.C. § 7410(c)(1)(A) by failing to satisfy its mandatory duty to promulgate a federal implementation plan ("FIP") within two years of finding that Texas failed to submit a nonattainment state implementation plan ("SIP") for Rusk and Panola Counties within 18 months of designating that area as failing to meet the National Ambient Air Quality Standard ("NAAQS") for sulfur dioxide ("$SO_2$"), as required under the Clean Air Act, 42 U.S.C. §§ 7502, 7514-7514a, and EPA's final nonattainment

designation for that area, 81 Fed. Reg. 89,870 (Dec. 13, 2016).[1] EPA must remedy its violation of Clean Air Act, 42 U.S.C. § 7410(c)(1), by expeditiously issuing a federal implementation plan or approving a late state implementation plan that provides for attainment of the NAAQS as expeditiously as practicable.

## I. SULFUR DIOXIDE AND HUMAN HEALTH

Exposure to $SO_2$, for even very short periods of time, can have significant health impacts including the aggravation of asthma attacks, and cardiovascular and respiratory failure. These impacts lead to increased hospitalizations and premature death.[2] Children, the elderly, and adults with asthma are particularly at risk.

To address those significant health threats, in 2010, EPA issued a one-hour $SO_2$ NAAQS standard that the agency determined is "requisite to protect the public health."[3] EPA has estimated that between 2,300 and 5,900 premature deaths and 54,000 asthma attacks a year will be prevented by the new standard.[4] EPA estimated that the net benefit of implementing the revised one-hour $SO_2$ NAAQS was up to $36 billion dollars in avoided public health costs and lost productivity.[5]

Sulfur dioxide pollution is not only harmful to human health by itself, but it also contributes to the atmospheric formation of fine particulate matter, which can cause a host of health problems, including aggravated asthma, chronic bronchitis, and premature death.[6] Particulate matter can also be transported long distances and can contribute to poor air quality hundreds of miles away.[7] In fact, $SO_2$ emissions from a handful of Texas power plants have been shown to contribute to premature death, asthma events, tens of thousands of lost work and school days, and billions in public health impacts *each year* across the central United States.[8] Particulate

---

[1] *See* Findings of Failure to Submit State Implementation Plans Required for Attainment of the 2010 1-Hour Primary Sulfur Dioxide ($SO_2$) National Ambient Air Quality Standard (NAAQS); *See* 85 Fed. Reg. 48,111 (Aug. 10, 2020) (effective Sept. 9, 2020).

[2] *See* Primary National Ambient Air Quality Standard for Sulfur Dioxide, 75 Fed. Reg. 35,520, 35,525 (June 22, 2010).

[3] *Id.*; *see also* 42 U.S.C. § 7409(b)(1). The new 2010 $SO_2$ NAAQS standard is a 1-hour standard set at 75 parts per billion, or approximately 196 micrograms per cubic meter. 40 C.F.R. § 50.17(a).

[4] EPA, Final Regulatory Impact Analysis ("RIA") for the $SO_2$ National Ambient Air Quality Standards (NAAQS), at tbl. 5.14 (June 2010), https://www3.epa.gov/ttn/ecas/docs/ria/naaqs-so2_ria_final_2010-06.pdf.

[5] 75 Fed. Reg. at 35,588.

[6] 78 Fed. Reg. 3086, 3103, 3105-06 (Jan. 15, 2013).

[7] EPA, Sulfur Dioxide (SO2) Pollution, Sulfur Dioxide Basics *available at* https://www.epa.gov/so2-pollution/sulfur-dioxide-basics.

[8] *See* Report of Dr. George Thurston Regarding the Public Health Benefits of EPA's Proposed Rulemaking Regarding Best Available Retrofit Technology for Texas Sources Under the Regional Haze Rule, at 19, (May 4, 2017), *available at* www.regulations.gov (Docket ID No. EPA-R06-OAR-2016-0611-0072).

matter from Texas power plants also causes or contributes to visibility impairment in numerous Class I national parks and wilderness areas.[9] $SO_2$ is also a major driver of acid rain, damaging trees, crops, historic buildings and monuments, and altering the acidity of both soils and water bodies,[10] and negatively affecting endangered species.[11]

## II.   IMPLEMENTATION OF THE NAAQS

EPA's issuance of the one-hour $SO_2$ NAAQS triggered mandatory statutory timetables for EPA to "designate" all areas of the country that fail to comply with the standard. Within one year of EPA's issuance of the standard, each state was required to submit to EPA a list of recommended designations for all areas (or portions thereof) in the state as nonattainment, attainment, or unclassifiable.[12]

EPA's final air quality designations govern the stringency of the Clean Air Act state implementation plans ("SIPs") that will be required from each state to ensure achievement and maintenance of the NAAQS in every state. *See* 42 U.S.C. § 7407(a). If an area is designated as being in "attainment," the state is required to develop a SIP that ensures maintenance and enforcement of the NAAQS. *Id*. § 7410(a)(1)-(2). If an area is designated "nonattainment," however, the state must submit a SIP with additional measures, including "new source" review permitting rules and provisions requiring existing sources to adopt, as expeditiously as practicable, all reasonably available pollution control measures and technologies to ensure attainment. *Id*. §§ 7502, 7503, 7514-7514a(b)(1). In either case, the state must submit to EPA a SIP within 18 months of the effective date of the designation.

Under 42 U.S.C. § 7410(k)(1)(B), EPA is required to determine whether a SIP submittal is administratively complete within six months of the agency's receipt of a plan or plan revision. If a state fails to submit a required SIP within six months of the submittal deadline, however, EPA must issue a finding to that effect, because there is no submittal that may be deemed administratively complete. *Id.* This determination is referred to as a "finding of failure to submit." If EPA issues a finding of failure to submit, the agency has a mandatory duty, within two years, to either promulgate a FIP or approve a corrected SIP that meets the requirements of

---

[9] *See, e.g.*, 40 C.F.R. § 51.308; 82 Fed. Reg. 3,078 (Jan. 10, 2017); National Research Council, Protecting Visibility in National Parks and Wilderness Areas, 1993, National Academies Press, *available at* https://nap.nationalacademies.org/read/2097/chapter/1.

[10] *See* EPA, Integrated Science Assessment (ISA) for Oxides of Nitrogen, Oxides of Sulfur, and Particulate Matter - Ecological Criteria, *available at* https://www.epa.gov/isa/integrated-science-assessment-isa-oxides-nitrogen-oxides-sulfur-and-particulate-matter.

[11] 77 Fed. Reg. 20,218, 20,241-42 (Apr. 3, 2012) *available at* https://www.govinfo.gov/content/pkg/FR-2012-04-03/pdf/2012-7679.pdf#page%3D21.

[12] The Clean Air Act defines a nonattainment area as "any area that does not meet (or that contributes to ambient air quality in a nearby area that does not meet) the [NAAQS] for the pollutant"; an attainment area is "any area . . . that meets" the NAAQS; and an unclassifiable area is "any area that cannot be classified on the basis of available information as meeting or not meeting the [NAAQS] for the pollutant." 42 U.S.C. §§ 7407(d)(1)(A)(i)-(iii).

the Clean Air Act and includes reasonably available pollution reduction measures to ensure compliance with NAAQS. 42 U.S.C. § 7410(c)(1)(A).

### III. EPA'S TEXAS NONATTAINMENT DESIGNATIONS FOR $SO_2$

Nearly all $SO_2$ pollution in the United States comes from a handful of very large coal-fired power plants.[13] Texas's largest coal-burning power plant, Luminant's Martin Lake Steam Electric Station, is routinely ranked among the largest annual $SO_2$ polluters in the country, and in many years it is the single largest source of harmful $SO_2$ in the country.[14] Based on 2014-2021 data from EPA's Air Markets Program Database, Martin Lake alone emitted, on average, approximately 45,000 tons of $SO_2$ annually. In many years, Martin Lake, by itself, emits more harmful $SO_2$ pollution than all of the sources in Louisiana or Arkansas, combined.[15] That is not because Martin Lake is the largest power plant in the nation, but because it lacks cost-effective, efficient pollution controls commonly used throughout the industry and in Texas.[16]

Effective January 12, 2017, EPA determined that the area surrounding Martin Lake, in portions of Rusk and Panola Counties, failed to meet the health-based $SO_2$ NAAQS, and therefore designated the area as being in nonattainment. 81 Fed. Reg. 89,870 (Dec. 13, 2016).[17] Consistent with its final $SO_2$ NAAQS rule, technical guidance, and past practice, EPA based the Martin Lake nonattainment designation on extensive air dispersion modeling because there was no relevant monitoring data to review at the time of the designation. By 2019, however, Texas's own certified monitoring data confirmed that the air quality in the communities surrounding Martin Lake routinely fails to meet the $SO_2$ NAAQS.

In February 2017, Texas and the operator of the Martin Lake power plant filed petitions for judicial review of EPA's $SO_2$ nonattainment designations. The final rule, however, remains in

---

[13] In fact, 91% of all U.S. $SO_2$ emissions come from coal-fired electric power plants. Sierra Club Comments at 2, *available at* www.regulations.gov (Docket ID No. EPA-HQ-OAR-2014-0464-0420 (Mar. 31, 2016) [hereinafter "Sierra Club Comments"] (citing U.S. EPA, 2011 National Emissions Inventory (NEI) Data, https://www.epa.gov/air-emissions-inventories/2011-national-emissions-inventory-nei-data)). At the time EPA promulgated its area designations, 2011 was the most recent year for which complete National Emission Inventory data was available.
[14] EPA, Clean Air Markets Program Data (CAMPD) Custom Data Download, *available at* https://campd.epa.gov/data/custom-data-download.
[15] *Id*.
[16] *See* EPA, Technical Support Document for the Cost of Controls Calculations for the Texas Regional Haze Federal Implementation Plan (Cost TSD), *available at* www.regulations.gov (Docket ID No. EPA-R06-OAR-2014-0754-0008, at 1 (Nov. 2014) (noting13 units at 6 large facilities in Texas do not have scrubbers to control $SO_2$ pollution)).
[17] In the same rule, EPA also determined that the areas surrounding the coal-fired Big Brown power plant in the Freestone and Anderson Counties Area, and the Monticello power plant in Titus County, failed to meet the health-based 2010 $SO_2$ NAAQS. 81 Fed. Reg. at 89,873. In 2018, however, Big Brown and Monticello permanently ceased operations, and in 2021, EPA issued a final Clean Data Determination for each of those areas, thereby suspending Texas's SIP obligations for each area. 86 Fed. Reg. 26,401 May 14, 2021). Accordingly, the Big Brown and Monticello nonattainment areas are not relevant to this notice of intent.

effect pending judicial review. Accordingly, under Section 191 of the Clean Air Act, Texas was required to submit to EPA a state implementation plan for the Martin Lake (i.e., Rusk-Panola County) nonattainment area within 18 months of the effective date of the designation, *i.e.*, by no later than July 12, 2018. 42 U.S.C. § 7514; *see also* 81 Fed. Reg. at 89,871. Ultimately, Texas failed to meet that statutory deadline.

As discussed above, the text and structure of the Clean Air Act mandates that all areas of the country implement any necessary pollution reductions and come into compliance with the 2010 $SO_2$ NAAQS no later than June 2018. More than four years after that deadline, and despite ample opportunity, Texas has failed to submit a complete and lawful nonattainment plan, let alone implement the pollution reductions necessary to bring Martin Lake into compliance with the 2010 $SO_2$ NAAQS. It is now more critical than ever for EPA to stop its illegal delays in implementing a lawful nonattainment plan for Martin Lake. EPA must issue a federal implementation plan that requires Martin Lake to adopt all reasonably available pollution control technologies to ensure attainment of the NAAQS as expeditiously as practicable.[18]

### IV. TEXAS FAILED TO TIMELY SUBMIT A NONATTAINMENT SIP FOR THE RUSK-PANOLA AREA.

Under 42 U.S.C. § 7410(k)(1)(B), EPA is required to determine whether a SIP submittal is administratively complete. If, six months after a submittal is due, a state has failed to submit a SIP, there is no submittal that may be deemed administratively complete, and EPA must make a determination stating that the state failed to submit the required SIP submittal. *Id.*

On April 27, 2020, Sierra Club filed a Clean Air Act citizen lawsuit against the EPA for failing to issue a statutorily required finding that Texas had failed to timely submit a nonattainment plan for the Martin Lake area.[19] As noted, within 18 months of the effective date of EPA's 2016 nonattainment designation for Martin Lake—here, by July 12, 2018—Texas was required to submit a Clean Air Act "nonattainment" plan ensuring that those areas come into compliance with the NAAQS as "expeditiously as practicable but no later than 5 years from the date of the nonattainment designation."[20] Because Texas failed to timely issue a state implementation plan ensuring that Martin Lake comes into compliance with the NAAQS, Sierra Club sued EPA to compel the agency to issue a statutorily-mandated finding that Texas failed to submit a nonattainment state implementation plan.

### V. EPA IS IN VIOLATION OF ITS STATUTORY DUTY TO ISSUE A FIP FOR MARTIN LAKE BECAUSE TWO YEARS HAVE PASSED SINCE THE AGENCY DETERMINED THAT TEXAS FAILED TO SUBMIT A SIP.

In response to Sierra Club's lawsuit, on August 10, 2020, EPA issued the requisite finding that Texas failed to submit a nonattainment SIP for the Rusk-Panola area, thereby triggering an obligation for EPA to, anytime within two years, issue a federal implementation plan or approve a state plan that ensures $SO_2$ pollution reductions necessary to ensure attainment of the

---

[18] 42 U.S.C. §§ 7502, 7503, 7514-7514a(b)(1).
[19] *Sierra Club v. Wheeler*, Case No. 1:20-cv-1088 (D.D.C. filed Apr. 27, 2020), ECF Doc. 1.
[20] 42 U.S.C. §§ 7502, 7503, 7514-7514a(b)(1).

NAAQS.[21] That finding of failure to submit became effective September 9, 2020, and therefore required EPA to issue a federal plan or approve a corrected state implementation plan by September 9, 2022. 85 Fed. Reg. at 48,112; *see also* 42 U.S.C. § 7410(c)(1)(A) (EPA must issue a federal plan within two years of finding that a state "failed to make a required submission," unless the state "corrects the deficiency, and the Administrator approves the plan or plan revision, before the Administrator promulgates such Federal implementation plan.").

EPA has failed to issue a FIP for the Rusk-Panola $SO_2$ nonattainment area within the two-year deadline after finding that Texas failed to submit the required state implementation plan. Nor has EPA approved a corrected Texas implementation plan that ensures $SO_2$ pollution reductions necessary to ensure attainment of the NAAQS in the Rusk-Panola nonattainment area. Consequently, EPA is in violation of its mandatory duties under 42 U.S.C. § 7410(c)(1).

As required by 40 C.F.R. § 54.3, the persons providing this notice are:

> Sierra Club
> Attn: Joshua Smith
> 2101 Webster St., Ste. 1300
> Oakland, CA 94612
>  (415) 977-5560
> joshua.smith@sierraclub.org

Sierra Club would prefer to resolve this matter without the need for litigation. Quickly and fairly resolving this matter would be a clear indication that EPA intends to respect the rule of law. Accordingly, we look forward to EPA contacting the undersigned counsel to resolve this matter. If you do not do so, however, we will assume that you are not interested in settling this matter, or coming into compliance with the law, and we will file a complaint.

Sincerely,

Joshua Smith
Senior Staff Attorney
Dru Spiller
Associate Attorney
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
joshua.smith@sierraclub.org
dru.spiller@sierraclub.org

---

[21] 42 U.S.C. § 7410(c)(1); 85 Fed. Reg. 48,111 (Aug. 10, 2020).